To theIN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Fadeel Nahil Shuhaiber, | |
| Plaintiff, | No. 18 CV 1306 |
| v. | Honorable Nancy L. Maldonado |
| Dr. Clary, et. al., | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Fadeel Shuhaiber brings this civil rights action pursuant to 42 U.S.C. § 1983

against Defendants Dr. Tyrisha Clary, Dr. Noella Mbah, Dr. Glen Trammell, and Dr. Reena Paul

("Defendants"). Shuhaiber contends that the Defendants violated his due process rights under the

Fourteenth Amendment by providing inadequate medical treatment for his diabetes while

Shuhaiber was a pretrial detainee at the Cook County Jail. (Dkts. 24, 35.)[1] Defendants have moved

for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). (Dkt. 143.) For the

reasons explained in this opinion, the Court grants summary judgment to Defendants.

**Background**

Because this case is before the Court on summary judgment, the factual record is framed

largely by parties' Local Rule 56.1 statement of facts, although the Court retains discretion to

"consider other materials in the record" where appropriate. Fed. R. Civ. P. 56(c)(3). Except as

otherwise noted below, the following represents the undisputed facts based on the parties' Local

Rule 56.1 statements and responses.[2] Where the facts are properly disputed, the Court has indicated

---

[1] In citations to the docket, page numbers are taken from the CM/ECF header, except when the Court cites to deposition testimony, in which case the Court will cite to the internal transcript page and line number.

[2] The Court cites in particular to Shuhaiber's response to Defendants' statement of facts, (Dkt. 147), and

each side's position.

Plaintiff Fadeel Shuhaiber was a pretrial detainee at the Cook County Jail from October 29, 2015, until August 7, 2017. (Dkt. 147 at 1, ¶ 1.) Defendants Dr. Tyrisha Clary, Dr. Noella Mbah, and Dr. Reena Paul are all physicians licensed to practice medicine in Illinois; Dr. Glen Trammell is a physician assistant licensed to practice in Illinois. (*Id.* at 1–2, ¶¶ 2–5.)[3] Defendants all worked for Cook County, Illinois during the relevant time period. (*Id.*) Drs. Clary, Paul, and Trammell provided medical treatment and care at the Cook County Department of Corrections, and Dr. Mbah was a pharmacist based at Cermak Urgent Care. (*Id.*) The parties agree that this Court has subject matter jurisdiction and that venue is proper in this District. (*Id.* at 2, ¶¶6–8.)

Shuhaiber is a type 1 diabetic who is insulin-dependent, and each of the Defendants provided treatment to Shuhaiber during his detention at Cook County Jail. (*Id.* at 2, ¶¶ 2–3.) Between October 2015, when Shuhaiber was first detained, and August 2017, when Shuhaiber was released from Cook County Jail into the custody of the Illinois Department of Corrections, Dr. Trammell saw Shuhaiber seven times (*Id.* at 2, ¶ 4), Dr. Clary saw Shuhaiber seven times (*Id.* ¶ 18), Dr. Paul saw Shuhaiber six times (*Id.* ¶ 24 ), and Dr. Mbah saw Shuhaiber at least 14 times. (*Id.* ¶ 28.)[4] At these visits, Defendants generally monitored Shuhaiber's blood sugar levels, counseled him on his diet, and discussed his insulin regimen. (*See, e.g., id.* ¶¶ 6–9, 19, 25–27, 30, 33–35.) The parties' respective Local Rule 56.1 statements do not detail each and every one of these visits with Defendants, but rather excerpt and highlight different visits over the course of

---

Defendants' response to Shuhaiber's statement of additional facts, (Dkt. 150), where both the asserted fact and the opposing party's response are set forth in one document.

[3] It appears from the statement of facts that Dr. Clary's legal name is Dr. Clary-Selli. The Court will refer to her as Dr. Clary, however, as  parties do and as she is named in the case caption.

[4] Defendants suggest Dr. Mbah saw Shuhaiber 25 times, but Shuhaiber disputes this fact. Shuhaiber asserts that the medical records cited by Defendants only reflect visits on 14 occasions, and that the records for the other 11 dates indicate that Dr. Mbah was reviewing Shuhaiber's charts or records, but do not state that Mbah actually saw Shuhaiber on those 11 other occasions. (*See id.* ¶ 28.) It is enough for the purpose of the present motion to say that it is undisputed that Dr. Mbah saw Shuhaiber on at least 14 occasions.

Shuhaiber's detention. The Court will summarize Shuhaiber's treatment below as it is presented in the parties' statements of fact. As will become evident, Shuhaiber generally agrees that Defendants regularly met with him to check his blood sugar levels and counsel him on his diet and insulin regimen, but he disputes many of Defendants' statements in the medical records that suggest Shuhaiber did not always comply with his recommended diet.

**A. Defendants' treatment of Shuhaiber between October 2015 and December 2016.**

At Shuhaiber's first appointment with Dr. Paul in November 2015, Dr. Paul indicated in the medical notes that Shuhaiber was refusing a diabetic diet and that he signed a refusal form refusing labs. (Dkt. 145 ¶ 25.) At a subsequent appointment with Dr. Mbah in December 2015, Shuhaiber had a low blood sugar reading around lunchtime, which Dr. Mbah indicated was due to Shuhaiber not waking up for breakfast. (*Id.* ¶¶ 29–30.) Shuhaiber disputes that he had not woken up for breakfast when he saw Dr. Mbah, citing to his own deposition testimony that he did not refuse any meal while he was detained, always ate breakfast, and never refused a diabetic snack. (*Id.* ¶ 29–30; Pl.'s Dep. Dkt 145-5 at 112:3-18.)

Shuhaiber saw Drs. Paul and Mbah again in January 2016 for follow up on his diabetes treatment. (Dkt. 145 at ¶¶ 26, 31.) At a January 7 appointment with Dr. Mbah, the records state that Shuhaiber indicated that his prescription for Glucerna, a nutritional supplement, had expired and he was therefore not eating, and that Dr. Mbah adjusted his insulin prescription accordingly and reactivated the Glucerna prescription. (*Id.* ¶ 31; Dkt. 145-3 at 93, 101, 180.) At a January 26 appointment with Dr. Paul, Shuhaiber refused changes to his insulin regimen. (*Id.* ¶ 26.) At a subsequent appointment with Dr. Paul in February 2016, Dr. Paul indicated that Shuhaiber complained about the meat offered at the Jail and that "that's why I don't eat lunch." (*Id.* ¶ 27.) Shuhaiber disputes that he had not been eating when his Glucerna expired, and disputes that he

told Dr. Paul that he had not been eating lunch, again citing to his same deposition testimony noted above that he never refused any meal. (*Id.* ¶¶ 26–27.)

Dr. Mbah saw Shuhaiber several more times between April and June 2016. (*See id.* ¶¶ 32–37.) The records from these visits indicate that Shuhaiber was experiencing periodic hypoglycemia, that is, low blood sugar levels. (*See, e.g.,* Dkt. 145-3 at 114, 117.) At the April 2016 visit, Dr. Mbah noted that Shuhaiber's blood sugar had been low the previous day, and that Shuhaiber had indicated he had received his insulin but "did not feel like eating." (Dkt. 147 ¶ 32.) Dr. Mbah counseled Shuhaiber on self-managing his insulin regimen and his diet, and adjusted Shuhaiber's insulin dosing. (*Id.* ¶¶33-35.) At the next appointment in May 2016, Dr. Mbah again noted that Shuhaiber's blood sugar was low, and noted that Shuhaiber explained that he had received his morning insulin but did not eat anything. (*Id.* ¶ 36.) At a subsequent appointment in June 2016, Dr. Mbah observed that the timing and context of Shuhaiber's hypoglycemic episodes were connected to "prandial doses of insulin, associated to dietary issues, [and] associated to missing meals." (*Id.* ¶ 37.) Dr. Mbah again counseled Shuhaiber about his medication, diet, and activity, and Shuhaiber indicated he understood. (*Id.* ¶ 38.) Shuhaiber disputes all the statements in the records that suggest he had missed any meals, again noting his testimony that he never refused a meal or diabetic snack. (*Id.* ¶¶ 32–37.)

Shuhaiber continued periodically following up with providers with respect to his diabetes over the course of 2016, including several times with Dr. Trammell, as well as with Dr. Clary and Dr. Mbah. At the first appointment with Dr. Trammell in July 2016, Dr. Trammell noted that Shuhaiber needed better control of his blood sugar and he determined that he would "modestly increase" Shuhaiber's insulin dose. (*Id.* at 2, ¶ 5.) At a follow up appointment in August 2016, Trammell advised Shuhaiber to maintain his proscribed diet, and discussed the need to maintain

4

regular exercise and body weight control (*Id.* at 2, ¶ 6). At a subsequent appointment in September 2016, Dr. Trammell noted that Shuhaiber's sugar levels were low in the mornings, and elevated in the afternoons, and adjusted Shuhaiber's insulin regimen to cover his lunchtime eating. (*Id.* at 2 ¶ 8.) Dr. Trammel again counseled Shuhaiber on following his diet, and discussed the signs and symptoms of hypoglycemia. (*Id.* ¶ 9.) Shuhaiber saw Dr. Trammell again in November and December 2016, and the records indicate that at both appointments Shuhaiber admitted to missing meals and overeating. (*Id.* ¶¶ 11–13.) The records further indicate that at the November 2016 visit Shuhaiber refused a medication change, and stated that he planned to do better with his diet. (*Id.* ¶ 12.) In December 2016, Dr. Trammell "modestly decreased" Shuhaiber's insulin in response to his ongoing hypoglycemic events. (*Id.* ¶ 14.) Shuhaiber also saw Dr. Clary in December 2016, and she noted that Shuhaiber reported an increase in hypoglycemia, which he attributed to eating less because he was not purchasing items from the commissary. (*Id.* ¶ 20) Shuhaiber saw Dr. Mbah one day after his appointment with Dr. Clary, during which Dr. Mbah similarly noted that Shuhaiber stated he had not been eating because he did not receive his gluten-free commissary items. (*Id.* ¶ 41.) Dr. Mbah recorded that Shuhaiber's low blood sugar was being caused by "very poor dietary intake" and noted that Shuhaiber had been counseled "on multiple occasions," but that he "refused to make any effort to eat adequate [sic]." (*Id.* ¶ 42.)

Shuhaiber again disputes the portions of the records from his visits with Drs. Trammell, Clary and Mbah to the extent they suggest he refused any meals, missed breakfast, refused any diabetic snacks, or that his repeated low sugar was due to a poor diet.

**B. Shuhaiber's treatment in 2017 and ongoing hypoglycemic and hyperglycemic events.**

Shuhaiber continued regularly visiting providers about his diabetes through 2017, until his ultimate transfer from Cook County Jail to IDOC custody in August 2017. Shuhaiber saw Dr. Trammel in January and February 2017, and records state that Shuhaiber admitted at those visits to missing insulin doses, missing meals, and overeating. (*Id.* ¶¶ 15-16.) Dr. Trammell noted at the February 2017 appointment that Shuhaiber's "poor blood sugars are due to his awful compliance with Rx, diet, and any suggested medical plaints [sic]. He is refuses [sic] any medication changes today." (*Id.* ¶ 17.) Shuhaiber saw Dr. Clary in March 2017, during which she counseled him on managing his sugars, including encouraging a low carbohydrate diet. (*Id.* ¶ 19.) During the appointment, Shuhaiber purportedly admitted to "eating noodles and potato chips and avoid[ing] foods on the tray," and Dr. Clary discussed with Shuhaiber that he should limit the portions of such carbohydrate foods. (*Id.* ¶¶ 22–23.) Shuhaiber once again disputes he made these statements about his diet, asserting that he never refused meals or a diabetic snack, and that "most of" his snacks were apples or rice and beans, not noodles and chips. (*See id.* ¶ 22.)

On March 23, 2017, Shuhaiber was found unresponsive in his cell with a low blood sugar reading of 23 mg/dL. (Dkt. 150 ¶ 6.) A nursing record from the incident indicates that Shuhaiber's levels were raised with medication and food from his meal tray, and that when he became responsive Shuhaiber stated that "I did not eat my lunch." (Dkt. 145-3 at 634) The records immediately preceding March 23 show that Shuhaiber had been experiencing low blood sugar levels for at least a few days, and that he saw Dr. Mbah on around March 21 to discuss his diet and insulin regimen. (*Id.* at 205.) The records indicate that Shuhaiber agreed to a change to his regimen to have his insulin dose given at lunch, instead of before breakfast. (*Id.* at 205.)

Shuhaiber saw Dr. Clary again in April 2017 and June 2017, during which time she again counseled Shuhaiber on his diet and to limit his consumption of carbohydrates such as noodles and potato chips. (Dkt. 147 ¶ 19; Dkt. 145-3 at 211, 219.) The records from these visits indicate that Shuhaiber had not experienced further hypoglycemic events and that his blood sugar levels had been improving since the recent change to his insulin regimen. (Dkt 145-3 at 211.) Shuhaiber also saw Dr. Mbah in June 2017, at which time Dr. Mbah noted that Shuhaiber's "poor control of blood glucose level is secondary to dietary intake," and that Shuhaiber's blood sugar readings suggested he was eating late at night and outside of the listed commissary items." (Dkt. 147 ¶¶ 44–45; Dkt. 145-3 at 221.) Shuhaiber once again disputes Defendants' recitations of what is contained in the medical records regarding his diet, asserting that he never refused meals or a diabetic snack, and that "most of" his snacks were apples or rice and beans, not noodles and chips. (Dkt. 147 ¶¶ 44–45.)

On around June 14, 2017, Shuhaiber was found unconscious in his cell again with a low blood sugar reading of less than 36 mg/dL. (*Id.* ¶ 49.) The nurse that found Shuhaiber indicated that there were multiple uneaten meal trays in his room. (*Id.* ¶ 50). Shuhaiber was given shots and food and his blood sugar level stabilized. (*Id.* ¶ 49; Dkt. 145-3 at 655.) Immediately following the incident, Dr. Mbah recommended a change in Shuhaiber's treatment to discontinue all his scheduled rapid acting insulin, and to start Shuhaiber on Glipizide and Metformin. (Dkt. 150 ¶ 1.)[5]

---

[5] Shuhaiber contends that Dr. Trammell approved of Dr. Mbah's recommendation for Glipizide and Metformin, citing to a "medical administration record" which lists Dr. Trammell's name under the "order" for those medications. (Dkt. 155 ¶ 2; Dkt. 148-1.) Defendants dispute that the record cited by Shuhaiber suggests that Trammell approved of the prescriptions, pointing to Dr. Trammell's own testimony about the medical record, in which he stated that he was not sure what the record meant or how it was generated, but that it did not indicate he approved of Shuhaiber being provided or prescribed any particular medication (Dkt. 155 ¶ 2; Trammel Dep. Dkt. 145-7 at 74:18-76:1). It is not apparent on the face of the record what the listing of Trammell's name means. In the absence of any testimony explaining the record, Shuhaiber's contention that it somehow means Dr. Trammell approved Shuhaiber's prescriptions rests on bald speculation. As will be discussed below, however, even if the Court assumed Dr. Trammell approved the prescriptions, Shuhaiber's claims based on the prescriptions still fail as a matter of law.

Dr. Mbah also indicated that Shuhaiber's medical providers would continue to monitor blood sugar levels to track any changes and potentially add an additional medication, and that Shuhaiber would continue on his scheduled "Lantus" insulin dosage. (*Id.*; Dkt. 145-3 at 226.)

On August 2, 2017, while he was in court, Shuhaiber complained of chest pain and was transported to the emergency room at Palos Hospital. (Dkt. 150 ¶ 14.) While at Palos Hospital, Shuhaiber was diagnosed with a number of conditions, including type 1 diabetes, chest pain at rest, acute kidney injury, and chronic celiac disease. (*Id.* ¶ 14.) The medical records do not tie any of these conditions to a particular cause, though the discharge note from the attending physician goes on to state that Shuhaiber "had hyperglycemia due to uncontrolled DM-1," and that he was "[s]tarted on insulin lantus nad [sic] lispro." (*Id.* ¶¶ 15–16.) The record also states, "Metformin DC," though Shuhaiber does not explain the meaning of this note. (*Id.*; Dkt. 148-2 at 9.) After his discharge from Palos Hospital on August 4, 2017, Shuhaiber was transferred from Cook County Jail into IDOC custody on August 7, 2017.

### C. Other Relevant Material Facts.

In addition to the specific treatment dates and events discussed above, the parties' statements of fact also contain several general assertions, some disputed, about Shuhaiber's condition and course of treatment during his detention that are relevant to the instant motion. Shuhaiber generally contends that he suffered from both high and low blood sugar readings on a number of occasions throughout his detention, and that his irregular readings could have been caused by being prescribed incorrect amounts of insulin. (Dkt. 150 ¶¶ 3–4, 10.) Shuhaiber further asserts that Defendants repeatedly changed his insulin dosage without his consent. (Dkt. 150 ¶ 5.) With respect to the prescriptions from Dr. Mbah for glipizide and metformin in particular, Shuhaiber asserts that Dr. Clary testified that those medications are not proper treatment for type

1 diabetes, but are instead intended for type 2 diabetes, which Shuhaiber did not have. (*Id.* ¶¶ 7–9.) Shuhaiber separately states that he suffers from PTSD, depression, nightmares, and high anxiety. (*Id.* ¶ 20.)

Defendants dispute that the medical record or testimonial evidence supports Shuhaiber's general contentions about the causes of his varied insulin levels, or that the doctors changed his dosage without consent. Instead, Defendants contend that it was Shuhaiber's eating habits that made managing his sugar levels very difficult. (Dkt. 148 ¶ 76.) With regard to the prescriptions for glipizide and metformin in particular, Defendants point to other testimony from Dr. Clary indicating that she would need more information to determine why Shuhaiber was prescribed glipizide and metformin, and testimony from Dr. Trammell that he had sometimes prescribed glipizide and metformin in conjunction with insulin. (Dkt. 150 ¶ 7; Trammel Dep. Dkt. 145-7 at 32:13–33:12; Clary Dep. Dkt. 145-9 at 68:19–73:19.)

Finally, apart from the above disputed facts, it is undisputed as a general matter that Shuhaiber's insulin regimen was dependent on his diet, and that his sugar levels fluctuate and change depending on the food he eats. (Dkt. 147 ¶¶ 62–63.) It is further undisputed that Shuhaiber refused his blood sugar check on twelve occasions, and the medical records also reflect that Shuhaiber refused his insulin dose on dozens of occasions, though the precise number of refusals is in dispute and unclear from the medical records themselves. (*Id.* ¶¶ 47–48.)[6] Additionally,

---

[6] Defendants claim that Shuhaiber refused his insulin 56 times, citing to a batch of approximately 60 pages of refusal forms signed by Shuhaiber. (Dkt. 145-3 at 245-312.) Shuhaiber disputes that the records demonstrate he refused insulin 56 times, noting that some of the records contain illegible handwriting, and others simply refer to his refusal of "AM meds" without clarifying what medications were being refused. (Dkt. 147 ¶ 48.) Shuhaiber's point is well taken, as many records are indeed difficult to decipher, and in the absence of testimony about the records, the Court would be speculating as to whether the refusals for "AM meds" necessarily includes his insulin dose every time that was the noted refusal. But Shuhaiber does not provide an alternative agreed-upon number of refusals, and simply points to his testimony that he signed "a couple of refusal forms" for insulin." (*Id.*) The Court's independent review of the medical records shows that there are at least two dozen separate refusal forms specifically noting refusals for insulin doses. (Dkt. 145-3 at 247–48, 259, 261, 263, 268, 269, 270–71, 273–74, 279–80, 283, 286, 295, 297, 300, 303, 305, 307, 309, 310, 312.) While the exact number of refusals may be in dispute then, it is at least undisputed based on

though Shuhaiber repeatedly disputed that he refused meals, he also admitted that he continued to snack between meals and snacked before bed. (*Id.* ¶ 69.) Shuhaiber also testified that he disagreed with many of his providers' decisions, and that he did not think any doctor would have more of a knowledge of his medical condition than himself, since he had been diabetic for 30 years and "nobody will know my body more than myself." (*Id.* ¶¶ 67, 70.)

### Standard of Review

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute about a material fact exists "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Genuine issues of material fact are not demonstrated by the "mere existence of some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, "[t]he controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016). Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carrol v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. S. Door Cnty. Sch. Dist.*, 673 F3.d 746, 751 (7th Cir. 2012).

---

the medical record evidence that Shuhaiber refused his insulin doses dozens of times.

In resolving a motion for summary judgment, the Court construes all evidence and draws all reasonable inferences in the non-movant's favor. *Malen v. MTD Prods., Inc.*, 628 F.3d 296, 303 (7th Cir. 2010). However, the Court makes "only reasonable inferences, not every conceivable one." *Spitz v. Proven Winners N. Am.*, LLC, 759 F.3d 724, 730 (7th Cir. 2014); *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (the nonmovant "is not entitled to the benefit of inferences that are supported by only speculation or conjecture.").

## Discussion

Shuhaiber's operative amended complaint asserts a claim pursuant to 42 U.S.C. § 1983 that Defendants violated Shuhaiber's due process rights under the Fourteenth Amendment by failing to adequately treat his diabetes while he was a pre-trial detainee at Cook County Jail. (Dkts. 24, 35.)[7] In order to succeed on a claim that jail officials or medical personal violated due process rights in the provision of medical treatment, a plaintiff must show that: (1) "the defendant[s] acted purposefully, knowingly, or recklessly when considering the consequences of [their] response to the medical condition at issue in the case"; and (2) "the challenged conduct was objectively unreasonable in light of the totality of the relevant facts and circumstances." *James v. Hale*, 959 F.3d 307, 318 (7th Cir. 2020). As to the second element, courts "must view the evidence and gauge objectively, without regard to any subjective belief held by an individual defendant, whether the response 'was reasonable.'" *See Holman v. Triplett*, No. 1:17-CV-4710, 2020 WL 5570039, at *5 (N.D. Ill. Sept. 17, 2020) (citing *McCann v. Ogle Cnty., Illinois*, 909 F.3d 881, 886 (7th Cir. 2018)).

---

[7] Shuhaiber was pro se and incarcerated at the time he prepared his operative amended complaint, which originally named 17 defendants in relation to the treatment (or alleged lack thereof) of his diabetes at Cook County Jail. (Dkt. 24.) The Court screened the amended complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a), dismissed a number of the defendants, and held that Shuhaiber could proceed on his claims against Drs. Trammell, Clary, Mbah, and Paul.

Critically, "[m]ere disagreement with a doctor's medical judgment is not enough to establish that a course of medical treatment was objectively unreasonable." *McClendon v. Lochard*, No. 19-CV-373, 2021 WL 3172982, at *8 (N.D. Ill. July 27, 2021) (collecting cases); *Smith v. Kapotas*, No. 18 C 4260, 2020 WL 553619, at *5 (N.D. Ill. Feb. 4, 2020) ("[A] pretrial detainee is not entitled to the treatment of his choice, nor may he state a constitutional claim merely by second-guessing a medical provider's professional judgment."); *see also Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011) ("[A]n inmate is not entitled to demand specific [medical] care."). Instead, a plaintiff must point to some evidence in the record demonstrating that the doctor's treatment decisions were "so far afield of accepted professional standards" that a jury could find they were not a product of medical judgment. *See Cashner v. Widup*, No. 17-1079, 2017 WL 11622116, at *3 (7th Cir. Nov. 30, 2017) (citations omitted); *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) ("The federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment.").

Defendants have moved for summary judgment, arguing that the evidence demonstrates that they all acted objectively reasonably as a matter of law in treating Shuhaiber's diabetes. In particular, Defendants contend that the record reflects that they did everything they could to ensure that Shuhaiber was receiving proper medication and counseling to manage his blood sugar levels, and that the high and low levels that Shuhaiber experienced were due to his own actions in refusing to properly manage his diet despite Defendants' advice, and attempting to self-manage his treatment and dosing based on what he believed was best. (Dkt. 144 at 7–11.) Defendants alternatively argue that they are entitled to qualified immunity, because no court has ever held that

a plaintiff has stated a cognizable constitutional claim under similar circumstances. (*Id.* at 12–13.)

Shuhaiber opposes summary judgment by arguing that there are a number of undisputed facts in the record, and disputed facts with respect to his overall course of treatment, that create a triable issue on whether Defendants' conduct was objectively unreasonable. (Dkt. 146 at 4–6.) Shuhaiber also takes issue with the specific decision to discontinue his rapid acting insulin and prescribe him glipizide and metformin, arguing that there is evidence from which a jury could infer that the prescriptions were a significant departure from accepted medical standards, and therefore were objectively unreasonable. (*Id.* at 6.)

Based on its review of the record and the parties' briefing, the Court ultimately finds that Shuhaiber has not presented enough evidence to create a triable issue of fact on whether Defendants acted objectively unreasonable. Defendants are thus entitled to judgment in their favor.

### A. Defendants' prescriptions for glipizide and metformin do not give rise to an inference of objectively unreasonable conduct.

The Court will begin with Shuhaiber's argument that a jury could infer it was objectively unreasonable to prescribe him glipizide and metformin, as that is a discrete issue that can be resolved separately from the question of whether Defendants' overall course of treatment was objectively unreasonable. The parties agree, and the medical records appear to confirm, that Dr. Mbah made the initial recommendation to discontinue Shuhaiber's rapid acting insulin and start the two medications after Shuhaiber was found unresponsive in his cell in June 2017. (Dk. 150 ¶ 1.)[8] Shuhaiber additionally contends that it was Dr. Trammell who approved of Dr. Mbah's

---

[8] The Court notes that, although Dr. Mbah's name appears on the medical note recommending the treatment, (Dkt. 145-3 at 226), Dr. Mbah also testified in her deposition that she was not responsible for the recommendation, that the decision came from a discussion amongst the entire medical team, and that she merely recorded the recommendation in her notes. (Mbah Dep. Dkt. 145-6 at 127:4–23, 129:24–130:5.) Whether Dr. Mbah is ultimately responsible for the recommendation is thus less than clear. But since Defendants do not dispute that Dr. Mbah made the recommendation, the Court will accept the fact as undisputed for the purpose of the present motion.

recommendation and actually ordered the prescriptions. (*Id.* ¶ 2.) As noted *supra* at note 5, Shuhaiber has not supported that contention with anything more than speculation based on unclear medical records. But regardless of whether the decision rested solely with Dr. Mbah or also included Dr. Trammell, the Court ultimately finds that Shuhaiber has failed to come forth with sufficient evidence creating any genuine dispute of fact as to whether the prescriptions for glipizide and metformin were objectively unreasonable.

Shuhaiber argues that Dr. Clary's testimony that she had never prescribed glipizide and metformin to a type 1 diabetic, because those medications are intended for treatment of type 2 diabetes, is sufficient to permit an inference that the recommendation and prescriptions for the drugs was objectively unreasonable. (Dkt. 146 at 6; *see also* Dkt. 150 ¶ 8; Dkt. 145-3 at 73:11–16). For support, Shuhaiber points to a nonprecedential decision from the Seventh Circuit, in which an Illinois Department of Corrections prisoner claimed that a medical doctor had failed to adequately treat his type 1 diabetes, in part because he had substituted glipizide as an alternative to the prisoner's insulin regimen. *Waldrop v. Wexford Health Sources, Inc.*, 646 F. App'x 486, 491 (7th Cir. 2016). The Seventh Circuit reversed the district court's grant of summary judgment for the medical provider defendant, finding that there was conflicting deposition testimony from medical providers as to whether glipizide was an actual substitute to insulin as a treatment for type 1 diabetes, which the court held created a genuine dispute for trial as to whether the provider had acted with deliberate indifference to the inmate's medical condition. *Id.*

But while *Waldrop* may seem similar at first glance, a closer review of the facts and testimony reveal that the case is easily distinguishable and therefore of little help for Shuhaiber's claims.[9] Notably, the defendant medical provider in *Waldrop* had completely canceled the

---

[9] It should also be noted that *Waldrop* is an unpublished and nonprecedential decision and is therefore not binding authority in any event. *See, e.g., U.S. v. Townsend*, 762 F.3d 641, 646 (7th Cir. 2014).

prisoner's prescription for his insulin injections, and substituted glipizide as the *only* treatment. *Id.* at 491. While the defendant doctor testified that he believed glipizide could serve as a short-term alternative to insulin, there was contrary testimony in the record from another medical provider, who testified that a type 1 diabetic "cannot survive" without insulin injections, because they cannot produce their own insulin, and that there was "no science" supporting that pills such as glipizide could be an alternative or substitute to insulin. *Id.* The defendant attempted to argue that the testimony reflected a mere disagreement over possible treatments, but the Seventh Circuit rejected this contention, finding that the disparity in the testimony amounted to more than a mere disagreement. *Id.* at 491–92. Instead, the Seventh Circuit found that a reasonable jury could conclude from the second provider's testimony that the defendant's decision to prescribe glipizide was "so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment." (*Id.*) (citing *Pyles*, 771 F.3d at 409). In other words, the jury could reasonably find that the defendant was deliberately indifferent in prescribing glipizide in the place of insulin.

Here however, Shuhaiber was not prescribed glipizide and metformin as a substitute or as an alternative to insulin. The medical records indicate that Dr. Mbah recommended the discontinuation of *rapid acting* insulin after Shuhaiber was found unconscious in his cell in June 2017, and that he should be started on glipizide and metformin. (Dkt. 150 ¶ 1; Dkt. 145-3 at 225.) But the records also reflect that Dr. Mbah recommended that Shuhaiber continue his daily doses of Lantus, which is a long-acting insulin. (Dkt. 150 ¶ 1; Dkt. 145-3 at 225; *see also* Dkt. 145-6 at 79:12–13.) In other words, Shuhaiber was not receiving glipizide and metformin as a substitute for his insulin injections, but was receiving them in conjunction with his insulin. Shuhaiber has pointed to no medical testimony or record evidence suggesting that *this particular approach* was

medically improper such that it was objectively unreasonable. This case is thus unlike *Waldrop*, where the defendant prescribed a course of action that was directly and specifically rejected by another provider as having no scientific basis. Although Dr. Clary testified that she had not prescribed those medications for a type 1 diabetic, because they are treatments for type 2 diabetes, she was never asked whether it is proper as a general matter, or was proper for Shuhaiber in particular, to prescribe these medications to a type 1 diabetic in conjunction with insulin.[10] Indeed, in spite of her testimony about the general use of glipizide and metformin, Dr. Clary would not say whether she agreed or disagreed with Dr. Mbah's recommendation that Shuhaiber start on those medications, instead testifying that she would need more information, and that it appeared the recommended changes to Shuhaiber's prescriptions were a "last-ditch effort" to avoid further hypoglycemia in the wake of his second time being found unconscious in his cell. (Clary Dep. Dkt. 145-6 at 72:2–13.) Dr. Clary's testimony thus does not directly contravene the recommendation that Shuhaiber be prescribed glipizide and metformin in conjunction with insulin. In other words, Dr. Clary's testimony does not create the kind of dispute of fact that existed in *Waldrop*, and is insufficient to create any genuine dispute of fact as to whether that prescription was proper.

In sum, whatever the reasons for Dr. Mbah's decision to recommend that Shuhaiber be taken off rapid acting insulin and placed on glipizide and metformin in conjunction with Lantus insulin, and regardless of whether Shuhaiber agreed with that decision, there is insufficient evidence from which a jury could conclude the course of treatment was objectively unreasonable. Put another way, there is insufficient evidence from which any reasonable jury could infer that the decision to prescribe those medications on top of Lantus was "so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually

---

[10] Dr. Trammell, on the other hand, did testify as a general matter that he had previously prescribed those medications in conjunction with insulin. (*See* Dkt. 145-7 at 32:13–33:12.)

was exercising his professional judgment." *Waldrop*, 646 F. App'x at 491 (citing *Pyles*, 771 F.3d at 409). Shuhaiber had the burden at this stage to come forward with sufficient evidence from which a jury could reach that conclusion. He has failed to do so, and the testimony suggests at most differing medical judgments about the proper course of treatment under these particular circumstances, which is insufficient to create an issue for trial.[11] Any claim that it was objectively unreasonable for Dr. Mbah to recommend glipizide and metformin (and for those medications to be prescribed) thus fails as a matter of law.

### B. Defendants' course of treatment was objectively reasonable as a matter of law.

Setting aside Shuhaiber's arguments specific to glipizide and metformin, what remains is Shuhaiber's general assertion that there is a genuine dispute of fact as to whether Defendants' overall course of treatment was objectively unreasonable. In particular, Shuhaiber claims that it is genuinely disputed whether he was compliant with Defendants' dietary recommendations, and he argues that there is evidence that Defendants frequently increased and decreased his insulin dosage without consulting him. (Dkt. 146 at 5.) Shuhaiber further maintains that his high and low blood sugar levels could have been caused by being prescribed incorrect amounts of insulin, and that his insulin levels returned to normal after he left the Cook County Jail. (*Id.*) Shuhaiber contends that all these factual issues create at least a triable issue of fact on the reasonableness of Defendants'

---

[11] In addition to Dr. Clary's testimony, Shuhaiber's also points to statements in the medical records from his admission to Palos Hospital in August 2017. (Dkt. 146 at 6; Dkt. 148-2 at 9.) Shuhaiber notes that a Palos medical provider indicated that Shuhaiber presented with hyperglycemia due to uncontrolled type 1 diabetes, and recommended that Shuhaiber "start" on Lantus insulin and "lispro." (Dkt. 148-2 at 9.) The record also includes the notation "Metformin DC." (*Id.*) Shuhaiber suggests in a passing one-sentence argument that these notes further support an inference that the decision to discontinue his rapid acting insulin and prescribe glipizide and metformin was unreasonable. But the significance of the statements in the medical records are unclear, and Shuhaiber does not explain how the specific statements create any inference as to the propriety, one way or another, as to the specific recommendation for glipizide and metformin, nor does Shuhaiber point to any testimony from any witness explaining the records or the meaning of the notes. The Court is thus left to speculate as to the meaning of the notes and their relevance to the specific question of whether it was objectively unreasonable for providers to prescribe Shuhaiber glipizide and metformin on top of insulin. That a provider at Palos indicated that Shuhaiber was hyperglycemic, which happened on several occasions *previous* to his prescriptions, and that he needed to be on Lantus, which Dr. Mbah recommended, ultimately says nothing about whether Dr. Mbah's recommendation was objectively reasonable.

conduct.

As an initial matter, the Court notes it has significant doubts as to the existence of any genuine dispute of fact over Shuhaiber's eating habits while detained. As detailed in the factual background above, all four Defendants consistently recorded in contemporaneous medical records that Shuhaiber admitted to missing meals on a number of occasions over the course of his two years of detention. *See supra* at p. 3–6. It is undisputed that missing meals could have an impact on Shuhaiber's blood sugar levels, and several Defendants pointed to Shuhaiber's statements as part of the reason his blood sugar levels were often low. (*See, e.g.*, Dkt. 147 ¶ 76.). In response to all the records and testimony, Shuhaiber repeatedly points to the same few excerpted portions of his own deposition, in which he generally refuted any claims that he missed meals over the course of his entire two year detention, by stating that he never refused a meal, always ate breakfast, and never refused a diabetic snack. (*See* Pl.'s Dep. Dkt. 145-5 at 112:12–18, 122:3–4.) The suggestion of this testimony is that on multiple occasions over the course of years, four different medical providers independently and separately falsified Shuhaiber's purported statements in the medical records each and every time they indicated that he had admitted to missing a meal, though Shuhaiber stops short of arguing this explicitly. There is nothing, however, other than Shuhaiber's own testimony, to support such an inference that Defendants engaged in a vast conspiracy to lie and falsify medical records. Some courts have held that a plaintiff's self-serving and unsubstantiated claim that all of his opponents are lying is insufficient on its own to defeat summary judgment. *See Oswald v. Manlove,* No. 16-CV-991-PP, 2019 WL 464135, at *10 (E.D. Wis. Feb. 6, 2019) ("[T]he plaintiff accuses [defendant] of lying, but an unsupported allegation is not sufficient to create a genuine dispute as to an issue of material fact sufficient to default summary judgment."); *Brown v. Carr*, No. 20-CV-206-BHL, 2022 WL 2316433, at *4 (E.D. Wis.

June 28, 2022) ("[Plaintiff] cannot create a genuine dispute of material fact simply by claiming that his adversaries are lying"), *aff'd*, No. 22-2423, 2023 WL 2931291 (7th Cir. Apr. 13, 2023). To credit Shuhaiber's testimony would be to infer that Defendants lied the more than dozen times they indicated he had missed a meal, to say nothing of the third parties who recorded similar statements, such as the nurse who found Shuhaiber unconscious in March 2017 and recorded that Shuhaiber admitted to not having eaten. The Court finds such an inference unreasonable and unsupported by the record, suggesting that Shuhaiber's testimony alone is insufficient to defeat summary judgment.

On the other hand, the Court is mindful of its role at this stage of the proceedings, and that courts are generally not permitted to weigh the evidence or make credibility determinations about testimony at the summary judgment stage. The Court must also construe all facts in Shuhaiber's favor for purposes of the present motion. The Court will therefore credit Shuhaiber's testimony that he never refused a meal over the course of his two years of detention, that he always ate breakfast, and that he never refused a diabetic snack. Evening accepting this testimony as true, the Court finds it is not sufficient to create a genuine dispute of fact to defeat summary judgment. Rather the Court finds that the undisputed record, including the other evidence related to Shuhaiber's diet that he has not specifically disputed, demonstrates that Defendants' treatment of Shuhaiber was objectively reasonable as a matter of law.

This is not a case where a detainee claims that a medical provider completely ignored a medical condition, or unreasonably delayed in the provision of treatment. As the detailed factual background discussed above demonstrates, it is undisputed that Shuhaiber received regular and consistent treatment and counseling from Defendants throughout his incarceration, seeing them at least 34 times over the course of his detention. It is also undisputed that all Defendants counseled

Shuhaiber on the appropriate treatment for his condition, including managing his diet, and that they were consistently monitoring his blood sugar levels and attempting to adjust his treatment, including insulin regimen, accordingly. Shuhaiber does not contend that any of the Defendants dismissed or downplayed the seriousness of his condition. And other than his specific claims related to glipizide and metformin discussed (and rejected) above, he has not pointed to any other specific action or recommendation by any Defendant that he contends was objectively unreasonable.

Shuhaiber's claim thus essentially boils down to an argument that the treatment he received must have been constitutionally inadequate, or at least there is a genuine despite over its adequacy, because it is undisputed that he continued to suffer from low and elevated blood sugar levels throughout his detention, despite the ongoing treatment from Defendants. But Shuhaiber has presented no independent medical evidence or testimony to back up this claim. While Shuhaiber contends that incorrect insulin amounts *could have* resulted in his high and low blood sugar levels, he has presented no testimony, expert or otherwise, suggesting that the insulin amounts that were *actually prescribed* were not within an appropriate range, nor is there any testimony from any medical provider opining that Shuhaiber's blood sugar level problems were actually caused by an incorrect insulin prescription, or that this was the likely reason for his issues during detention.

It is true that that Dr. Clary testified that Shuhaiber's high or low blood sugar levels "could," as a general matter, be caused by being prescribed the incorrect insulin amounts. (Dkt. 150 ¶ 10.) But Dr. Clary went on to state that it is "very difficult" to prescribe an appropriate insulin regimen if Shuhaiber's eating was not consistent, and that his providers would be consistently trying to adjust his medication to account for an inconsistent diet, which would be a very difficult treatment to manage. And the medical records support Dr. Clary's suggestion that

20

Shuhaiber was not eating consistently with his recommended diet, notwithstanding the purported disputes mentioned above. While Shuhaiber contends that he never refused a meal or missed breakfast, and never missed a diabetic snack, these were not the only issues with his diet indicated by the medical records. Dr. Trammell noted on four separate occasions that Shuhaiber admitted to overeating in addition to missing meals. (Dkt. 147 ¶¶ 11–17.) Shuhaiber's blanket denial that he never "refused" a meal does nothing to refute the contention that he also *overate*, making the fact undisputed. In fact, Shuhaiber expressly admitted to Defendants' assertion that Shuhaiber "continued to snack between meals and snacked before bed." (*Id.* ¶ 69.) As to what those snacks were, notes from medical providers indicate that Shuhaiber admitted to eating noodles and chips on at least some occasions, carbohydrate-heavy foods that Defendants counseled him to avoid. While Shuhaiber claims that "most" of his snacks were apples or rice and beans, not noodles and chips, this does not create a dispute that he did eat those foods on at least *some* occasions, despite counseling to the contrary.

Thus, even if the Court construes the facts in Shuhaiber's favor and completely sets aside the numerous notes in the medical records stating that he missed meals, the undisputed record still reflects that he was not entirely compliant with his recommended diabetic diet, despite the undisputed fact that his diet was critical to controlling his blood sugar. At the very least, the records demonstrate that Shuhaiber's diet was not consistent, which would, as Dr. Clary testified, make it very difficult to control his insulin regimen. This difficulty appears to have been exacerbated by the undisputed facts indicating that Shuhaiber was engaging in self-management of his treatment. Shuhaiber testified to his belief that he knew his own body better than Defendants, and he apparently acted on that belief often—refusing blood sugar checks on a number of occasions, refusing changes to his medication regimen at multiple visits with Defendants, and refusing insulin

dosing on at least two dozen different occasions. The fact that Shuhaiber continued to struggle with high and low blood sugar under these circumstances does not give rise to a reasonable inference that it was *Defendants' conduct*, and their prescribed amounts of insulin, that was the reason for Shuhaiber's ongoing issues. To place the blame on Defendants in these circumstances, that is, to find that they acted objectively unreasonably, would require pure speculation and conjecture, which is not enough to create a genuine dispute of fact for trial.[12] *Amadio v. Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001) ("It is well-settled that speculation may not be used to manufacture a genuine issue of fact."); *SportFuel, Inc. v. PepsiCo, Inc*., 932 F.3d 589, 601 (7th Cir. 2019) (noting that a plaintiff cannot avoid summary judgment "with assumption or speculation" unsupported by the record).

Finally, Shuhaiber's suggestion that his blood sugar levels returned to normal after his detention, and his vague contention that he suffers from ongoing issues as a result of Defendants' treatment, are not sufficient to create any issues for trial. Shuhaiber cites to a medical record from August 2021—four years after his release from Cook County Jail— which he contends shows his blood sugar level were back to a normal range.[13] Even if the Court accepted the contention that Shuhaiber's blood sugar was normal in August 2021, this fact says nothing about the objective reasonableness of Defendants' conduct between October 2015 and August 2017. There is no

---

[12] Shuhaiber's general contention that Defendants "frequently" adjusted his insulin levels without his consent is of no help on this point. Shuhaiber points for support solely to his own testimony that this occurred "frequently," but provides no citation to any medical record evidence suggesting how often these changes purportedly occurred, when they occurred, and whether the adjustments had any impact on his blood sugar levels, let alone whether any impact was positive or negative. There are thus insufficient facts for the Court, or any reasonable fact finder, to begin to assess the reasonableness of these purported changes. And again, even if the insulin dosing was "frequently" changed without his consent, there is still no testimony that any specific change or prescription amount was improper. The suggestion that Defendants changed his insulin levels without his consent thus does not give rise to any inference that Defendants acted objectively unreasonably.

[13] The record merely indicates that Shuhaiber had an "A1C reading of 6.5 percent," which he contends is normal. But Shuhaiber once again presents a medical record in isolation without any explanatory testimony from a medical provider explaining what an A1C reading is, or what levels are considered normal. The fact is thus not properly supported. In any event, the Court will assume Shuhaiber's contention that the reading is "normal" is correct, as it is ultimately immaterial.

information, for example, explaining what kind of treatment Shuhaiber was receiving in August 2021, how it compared to Defendants' treatment, or any information about other relevant factors at the time such as Shuhaiber's diet. The fact that Shuhaiber had a purportedly normal blood sugar at one point in time four years after his detention is thus immaterial to the instant dispute. Shuhaiber also notes that when he was admitted to Palos Hospital he was diagnosed with celiac disease and kidney disease, and that he currently suffers from PTSD, depression, nightmares, and high anxiety. Shuhaiber suggests in conclusory fashion that these injuries and diagnoses are tied to Defendants' inadequate medical treatment, but he once again provides no evidence or testimony to back up this claim. There is nothing on the face of the Palos Hospital medical records suggesting that Shuhaiber's chronic celiac disease or kidney issues were related to his diabetes, or the treatment thereof. Nor does Shuhaiber point to any medical testimony even beginning to suggest that those conditions *could* be related to Defendants' treatment. As to Shuhaiber's mental health diagnoses: Shuhaiber's conclusory claim, based solely on his own testimony, that those conditions are tied to Defendants' conduct is insufficient to create any issue for trial. Again, there is no medical evidence tying those conditions to any action by any Defendant, or Defendants' treatment of Shuhaiber's diabetes in general. Regardless of whether Shuhaiber believes the conditions are the end result of Defendants' treatment, that does not relieve him of his responsibility to point to evidence at least raising a reasonable inference that Defendants' specific treatment decisions were objectively unreasonable, which he has failed to do.

As Defendants point out, the summary judgment phase is Shuhaiber's opportunity to come forward with evidence from discovery that creates a genuine dispute of fact as to the objective reasonableness of Defendants' conduct. It is Shuhaiber's opportunity to show that there is evidence from discovery backing up his claims of a constitutional injury. In response to Defendants'

undisputed evidence regarding the treatment Shuhaiber received, the burden was on Shuhaiber to come forward with his own evidence demonstrating that there is a genuine issue for trial, that is, that there is some evidence suggesting that Defendants' conduct was objectively unreasonable. The Court finds that he has failed to do so. It is evident that Shuhaiber vehemently disagreed with many of Defendants' recommendations and treatment decisions, believing that he knew his body and condition better. But mere disagreement with his providers does not give rise to a constitutional injury, and Shuhaiber's claims ultimately amount to speculation unsupported by evidence. While it is undisputed that Shuhaiber's blood sugar levels were not well-controlled during his detention, there is simply insufficient evidence to give rise to any inference that it was Defendants' conduct that caused the fluctuations. Put plainly, on this record there is insufficient evidence for any reasonable jury to return a verdict for Shuhaiber. Defendants are thus entitled to judgment as a matter of law.

## Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is granted. Judgement is entered in favor of Defendants.

ENTERED: 6/10/24

_Nancy L. Maldonado_
_____

Nancy L. Maldonado

United States District Court Judge

24